UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PEACHER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:11-CV-00080 |
| | ) |
| TRAVIS | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Presently before the Court is Defendant Craig Travis's ("Travis"), Motion for Summary Judgment filed on April 28, 2011. *Pro se* Plaintiff, Robert Peacher ("Peacher") responded on May 23, 2011 to which Travis replied on July 5, 2011. Thereafter, Peacher filed a surreply on July 13, 2011. For the following reasons, the Defendant's Motion will be DENIED.

## APPLICABLE STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary

1

judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## **FACTUAL BACKGROUND**

Peacher is an offender in the Indiana Department of Correction and was housed at the Westville Correctional Facility from April 23, 2010 until December 30, 2010.[1] Peacher alleges that he was subjected to excessive force by Defendant Travis, a correctional officer, in violation of the Eighth Amendment.

As alleged in his Complaint, Peacher asserts that on September 7, 2010, he was instructed by a prison official to ask for a statement from Travis. He then encountered Travis and requested "a statement concerning legal evidence Defendant Travis was in possession of that belonged to the Plaintiff." Peacher then avers that when he sought to show Travis the papers he had instructing him to ask for the statement, Peacher intentionally slammed a "food slot" onto his arms. Travis then allegedly left the section unit and returned a few minutes later with a metal object and proceeded to assault Peacher's arms and hands with the object. According to Peacher, as he attempted to retract his arms to avoid the continued assault, Travis grabbed his hands and prevented him from retracting them. Thereafter, Peacher alleges that Travis claimed Peacher was resisting and then sprayed Peacher with a pepper spray. As a result of the above incident, Travis submitted a conduct report and Peacher received a disciplinary sanction.

---

[1] Peacher was transferred to the Pendleton Correctional Facility where he continues to reside presently.

Westville Correctional Facility maintains a Grievance Procedure which permits inmate grievances relating to "[a]ctions of employees....over which the facility has jurisdiction." Docket #47, p. 8). The steps of this Grievance Procedure are outlined in the affidavit submitted by Grievance Specialist, Timothy Bean ("Bean"). According to Bean, the grievance process begins by the inmate attempting to resolve his complaint informally within five working days of the incident. (Bean Aff. ¶9). If this is unsuccessful, the inmate can proceed to a formal grievance process. (*Id.* at ¶10). Under this formal process, the inmate submits a grievance form to the executive assistant of the facility within 20 business days from the day of the event that is the subject of the grievance. (*Id.* at ¶11). If the grievance is not resolved, the inmate may pursue the issue by filing an appeal to the Department of Corrections Offender Grievance Manager.

On September 27, 2010, Peacher submitted an offender grievance to his counselor for delivery to Bean relating to the September 7, 2010 incident. (Docket #47, p. 9). After receiving no response to his offender grievance, on October 4, 2010, Peacher submitted a "Request for Interview" form to Bean, wherein he referenced his prior grievance and requested a grievance tracking or log number from Bean. In response to this document, Bean wrote "apparently, I haven't entered it yet." (Docket #47, p. 11). On October 27, 2010, Peacher wrote a statement, which he then had notarized by the counselor at the Westville Correctional Facility, stating:

> I, Robert Peacher, under penalty of perjury, hereby state and verify that I once again submitted a grievance on 9/27/2010 to my counselor to be given to T. Bean, the grievance admin. Once again that grievance was not responded to and there is a claim by T. Bean he doesn't have it and a claim by the counselor that she placed it in his mailbox. I made a carbon copy prior to submitting the grievance as I have done before when DOC staff starts ignoring and refusing to answer grievances filed...The 9/27/10 grievance is in regard to the assault on me by Craig Travis...this statement is necessary to continue to create a trail of DOC refusing to allow access to the grievance process which means by default I have exhausted these processes by their denial of access.

3

(Docket #47, p. 12).

On November 14, 2010, Peacher sent another "Request for Interview" form to Bean wherein he requested Bean respond to the grievance he filed in September relating to the alleged assault by Travis:

> Mr. Bean, you need to respond to me. You are denying me access to the grievance process. I've sent you a half dozen requests. I've asked for my 9-27-10 and 10-25-10 grievances to be processed and you don't respond. Can I have the grievance tracking numbers? Can I get a receipt? Why are you blocking my access? Ofc. Travis hurt me really bad for nothing. AT least process my 9-27 grievance relating to him. Stop denying me access to the grievance process. You know this means my admin remedies are exhausted. Why are you doing this? Are you going to answer any of my requests or grievances? Say something.

Bean, in a signed response, wrote, "last time." (Docket 47, p. 14).

Peacher continued to submit requests for interviews relating to the processing of his grievance. In a submission on November 29, 2010, Peacher asked Bean to supply the date of his last grievance concerning him. Bean, again in a written and signed response, wrote "last week of September." (Docket #47, p. 18). This response corresponds directly with Peacher's assertion that he filed a grievance on September 27. 2010. Finally, Peacher has submitted the Declaration of James Troxell ("Troxell"), an inmate housed at the Westville Correctional Facility. Troxell avers that between September 7, 2010 and October, 2010 he aided the plaintiff in writing grievances and request slips concerning the incident with Officer Travis. He further states that Peacher was unable to write due to lost motor control in his hands and he agreed to write grievances on Peacher's behalf. He indicates that he heard, on numerous occasions, Peacher ask about the status of his grievance as well as about why he was not hearing any response from Bean.

In contrast to all of this, the Defendant has submitted an affidavit from Bean wherein Bean

4

avers that his records reveal no grievances filed by Peacher relating to the September 7, 2010 incident. According to Bean, his review of the records "kept by the [Department of Corrections and the Westville Correctional Facility] shows that Offender Peacher filed no grievance related to these events." (Bean Aff. ¶16).

**DISCUSSION**

The Defendant contends that summary judgment is warranted in this case because Peacher did not exhaust all available remedies prior to filing suit. In response, Peacher argues that he attempted to utilize the prison grievance procedure but the prison was unresponsive to his attempts.

Generally, an inmate may not bring suit concerning prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But failure to exhaust is an affirmative defense, and it is up to the defendant to establish that Peacher had available remedies that were not exhausted. *See Jones v. Bock,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Obriecht v. Raemisch,* 517 F.3d 489, 492 (7th Cir.) *cert. denied,* --- U.S. ----, 129 S.Ct. 417, 172 LEd.2d 303 (2008). Inmates are not required to exhaust all administrative remedies-only those that are realistically available. *Woodford v. Ngo,* 548 U.S. 81, 102, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

The "availability" of a remedy is a factual determination. In *Kaba v. Stepp*, the Seventh Circuit explained several ways that an administrative process might not be available to a prisoner. 458 F.3d at 684. For example, if grievances must be filed on a particular form, but the forms are not provided, then there is no "available" remedy, despite its hypothetical possibility. *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004). Similarly, threatening a prisoner with violence for attempting to use an administrative process makes that process unavailable. *Hemphill v. New York,* 380 F.3d 680,

688 (2d Cir.2004). Or if a prisoner is told to wait to file a grievance, and that wait makes the claim untimely, then that too will have made the process unavailable. *Brown v. Croak,* 312 F.3d 109, 112 (3d Cir.2002). Finally, not responding to a prisoner's grievance, *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002), or engaging in affirmative misconduct, *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir.2006), will also make the process unavailable. The approach utilized by courts, then, has been to focus on whether the plaintiff did all he could to avail himself of the administrative process. If he followed the prescribed steps and could do nothing more, then available remedies were exhausted. *Id.* at 811.

Given the state of the record, there is a material dispute of fact as to whether Peacher did follow the prescribed steps to exhaust the prison's administrative process. He has submitted statements and paperwork showing that he did, in fact, attempt to file a grievance within the time prescribed. In response, the Defendant asserts that the paperwork is fabricated, (Reply at p. 2: "The carbon copy is dubious at best, given that it is not on a grievance form and does not even appear to vertically align with the blanks on the form provided.") and that even if Peacher *did* make an attempt to file a grievance, he still failed to take the grievance through the agency level of the grievance procedure. Thus, in Defendant's view, Peacher still did not exhaust his available remedies.

The problem with the Defendant's position is that Peacher has, in fact, raised a genuine issue as to whether he attempted to file a grievance pursuant to the procedure. Peacher did not submit just one document in support of his contention. He submitted 4 of them. And, in at least one of those documents Bean's signature appears and he responds in writing to Peacher indicating that Peacher's last grievance was filed in the "last week of September." This corresponds with Peacher's contention that he filed a grievance for the September incident and provides corroboration for his

6

assertion that he attempted to exhaust his administrative remedies.

What is also compelling about Peacher's filings is that it is clear that Bean was aware that Peacher *believed* he had filed a grievance. Peacher told him so repeatedly. And, if Bean did not in fact have such a filing he could have taken steps to offer aid to Peacher rather than respond in the fashion that he did. Thus, what the evidence establishes is that there is a question as to whether Bean's inaction-whatever the explanation-means that Peacher had no "available" remedy to exhaust. *See Aquilar-Avellaveda v. Terrell,* 478 F.3d 1223,1225 (10th Cir.2007); *Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir.2005); *Brown v. Valoff,* 422 F.3d 926, 943 n. 18 (9th Cir.2005); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir.2001); *Lewis,* 300 F.3d at 833.

Finally, the Defendant asserts that Peacher "could have" appealed the lack of action on his grievance to an administrative body. Yet, the Defendant has not provided any evidence that Peacher was aware of the existence of such a requirement in the first place or that he even knew it was available to him. There is no notification to Peacher on the Offender Grievance form, see *Lewis, 300 F.3d at 834:* ("The grievance form clearly explained, without exception, that Lewis had 30 days to appeal the denial.") and since the Defendant claims that no grievance was ever filed the prison provided no notice to him separately. Indeed, "[p]rison officials may not take unfair advantage of the exhaustion requirement, [ ] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d at 809. Given the state of the record, there is a question of fact as to whether Peacher did, in fact, exhaust his administrative remedies. Accordingly, the Defendant's Motion for Summary Judgment is DENIED.

**Conclusion**

Based on the foregoing, the Defendant's Motion for Summary Judgment is DENIED.

Entered this 28th day of September, 2011

                                                        s/ William C. Lee
                                                        United States District Court