UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ROBERT PEACHER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 3:11cv80 |
| | ) |
| CRAIG TRAVIS and | ) |
| PATRICK RZEPKA, | ) |
| | ) |
|     Defendants. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by one of the defendants, Patrick Rzepka ("Officer Rzepka"), on December 10, 2012. The plaintiff, Robert Peacher ("Peacher"), filed a response to the motion on January 31, 2013, to which Officer Rzepka filed a reply on February 14, 2013.

For the following reasons, the motion for summary judgment will be granted.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly

supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

Peacher is an offender in the Indiana Department of Corrections, and filed this action for damages alleging violations of his constitutional rights. Peacher alleges that Officer Craig Travis battered him and utilized excessive force in violation of the Eighth Amendment and that Officer Rzepka witnessed the incident and failed to intervene. Officer Rzepka requests that summary judgment be granted in his favor.

On September 7, 2010, Peacher was incarcerated in the Westville Control Unit ("WCU"). On this date, Peacher had put his arms through the cuff port[1] in his cell door and kept them in the open cuff port. Officer Rzepka has testified that an open cuff port with an offender who will not withdraw his hand is a major security risk. Officer Rzepka observed Officer Travis attempt to force Peacher to remove his hands and arms from the cuff port. Officer Rzepka did not believe that Officer Travis was using excessive force, and did not intervene in any way. Peacher and Officer Rzepka have both testified that the events at issue transpired very quickly.

Peacher has testified that he put his arms through the cuff port to hand Officer Travis some paperwork. According to Peacher, Officer Travis became angry after reading the document and slammed the cuff port door on Peacher's arms. Peacher further testified that

---

[1] Peacher refers to this opening in the cell door as a "food tray slot". The names appear to be interchangeable and both terms refer to a small opening in the cell door by which a food tray could be passed to an inmate, or an inmate could put his arms through the opening to be handcuffed prior to security officers opening the door. The opening is locked when not in use.

Officer Travis walked off the unit, while Officer Rzepka remained standing in front of Peacher's cell. Then Officer Travis returned within a minute or so with a metal box and began to strike Peacher's arms repeatedly with the metal box. Officer Travis then allegedly dropped the metal box and grabbed Peacher's arms before he could pull them back inside the cell. Peacher testified that Officer Travis sprayed him with mace and then released him.

Officer Rzepka seeks summary judgment on the § 1983 claims against him, arguing that he did not have time to intervene and, in any event, he is protected by qualified immunity because he did not know and could not have known that Officer Travis' actions constituted a constitutional violation.

To prevail under 42 U.S.C. § 1983, a plaintiff must establish that the defendant deprived him of a constitutionally secured right and that the defendant was acting under the color of state law. *J.H. ex rel. Higgin v. Johnson,* 346 F.3d 788, 791 (7th Cir. 2003). Section 1983 does not grant substantive rights; however, it provides a conduit in which to vindicate constitutionally or statutorily conferred rights. *Albright v. Oliver,* 510 U.S. 266, 271, *citing Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979). Therefore, a plaintiff must identify the constitutional right that was infringed in order to have an actionable claim under the statute. *Albright,* 510 U.S. at 271 *citing Graham v. Connor,* 490 U.S. 386, 394 (1989). Further, the doctrine of *respondeat superior* does not apply. *Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002). A defendant can be held liable under Section 1983 only for deprivations that he personally caused, either by direct action or by approval of the conduct of others—vicarious liability cannot support a Section 1983 claim. *Monell v. Dep't of Social Svcs*, 436 U.S. 658, 694 (1979); *Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). Liability can be based only on a finding that conduct

causing a constitutional deprivation occurred at the defendant's direction or with his knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

The Seventh Circuit has found that a state actor may be liable under § 1983 if he or she witnesses the use of excessive force and fails to intervene, under certain circumstances. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) In order to prove the liability of a bystander, the plaintiff must show that the bystander "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

The Seventh Circuit has imposed bystander liability on state actors who witness not only excessive force, but also other constitutional violations. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang,* 37 F.3d at 285. However, no matter what the alleged underlying constitutional violation is, the plaintiff must show that the bystander state actor had a realistic opportunity to intervene.

In *Lewis*, the Court found that the bystander officer did not have a realistic opportunity to stop his fellow officer from discharging the taser gun. *Lewis*, 581 F.3d at 472. In his deposition, the plaintiff had discussed at length how quickly the officer shot him with the taser after ordering him off the bed. *Id.* If the time between the order and the shot was so brief that the plaintiff could

4

not respond, the Court reasoned, the bystander officer could not be liable for failing to respond as well. *Id*.

Finally, the Court has made clear that the bystander state actor may only be held liable if the underlying constitutional violation, such as the use of excessive force, exists *and* the bystander had reason to know that it exists. "It is true that this court has recognized in the past that 'police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so' may be held liable. This is what has become known as a 'failure to intervene' basis for a constitutional violation under the Eighth Amendment, a principle which this circuit has long recognized. In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation…" *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (*citations omitted*).

In the present case, Officer Rzepka claims that he had neither a reason to believe that Officer Travis was using excessive force in violation of the Constitution, nor a realistic opportunity to intervene. Peacher has testified that he had put his arms through the cuff port and left them there, holding the cuff port open. (Peacher deposition pp. 76-77, 83). Officer Rzepka viewed this behavior as a major security threat and did not believed that Officer Travis's response was a constitutional violation. (Rzepka declaration ¶¶ 7, 14). From Officer Rzepka's perspective, Offender Peacher was resisting and Officer Travis was responding appropriately to restore order to the unit. (Rzepka declaration ¶¶ 8-14). Even if Officer Rzepka had any reason to believe that Officer Travis was using excessive force, the events transpired so quickly that he did not have a reasonable opportunity to intervene. (Rzepka declaration ¶ 17). Peacher has likewise

testified in his deposition that "everything happened so fast." (Peacher deposition p. 91).

Peacher, in response, argues that Rzepka had plenty of time to intervene because he watched Officer Travis "assault Mr. Peacher with the food door cover, leave the unit, walk back with a metal box, bludgeon him repeatedly while Mr. Peacher yelled that he was being video recorded, drop the box, grab Mr. Peacher and then spray him with mace as Mr. Peacher yelled for Officer Travis to release him." However, this argument directly contradicts Peacher's own deposition testimony that the events transpired very quickly. If the events had happened slowly enough for Officer Rzepka to react, then there would also have been time for Peacher to pull his arms back into his cell and stop the alleged assault. But the undisputed evidence is that Peacher left his arms through the cuff port, even before Officer Travis allegedly grabbed his arms. (Peacher Dep. at 36-37). Therefore, the court finds it undisputed that the alleged assault did not happen slowly enough for Officer Rzepka to react. Accordingly, Officer Rzepka is entitled to summary judgment.

Even if there had been time for Officer Rzepka to intervene, summary judgment is still appropriate because Officer Rzepka is entitled to qualified immunity. As a general rule, government officials are immune from civil liability so long as their conduct conforms to what a reasonable person would have believed to be lawful in light of those rights clearly enumerated by statute or the Constitution. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the event a defendant's behavior was not clearly forbidden at the time of its commission, he is assumed to lack knowledge about the conduct's possible illegality and cannot be held liable. *Id*. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction,

and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)(citation omitted). Designed to protect government officials "from undue interference with their duties and from potentially disabling threats of liability," the doctrine of qualified immunity serves as "*an immunity from suit* rather than a mere defense to liability." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008) (citations omitted). Further, "the protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 129 S. Ct. at 815. Since qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," courts must determine whether a defendant is entitled to qualified immunity as early as possible during the proceedings. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Purtell*, 527 F.3d at 621.

Officer Rzepka argues that even if Peacher could show that a constitutional violation occurred due to his failure to intervene, he is protected by qualified immunity because he believed Officer Travis' response to the security breach to be reasonable. The law is clear that absent a showing that an officer's behavior was clearly forbidden at the time of its commission, he is assumed to lack knowledge about the conduct's possible illegality and cannot be held liable. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Peacher argues that his case is similar to *Jones-Bey v. Conley*, 144 F. Supp. 2d 1035 (N.D. Ind. 2000), in which summary judgment was denied to a corrections officer who observed and recorded an entire cell extraction. Clearly, however, *Jones-Bey* involves far different facts than those at bar. *Jones-Bey* involves an offender who alleged that he was cell extracted by four officers who beat and slammed him into the ground, over a protracted period of time before

7

cuffing him in a cruel manner, and moving him about the facility before finally beating him again and leaving him in pain on the floor in handcuffs, all of which was video taped by the defendant officer. *Id*. *Jones-Bey* clearly puts officers on notice that they must intervene in protracted encounters where there is obvious time to do so. However, Peacher's attempt to apply *Jones-Bey* to the facts of the present case fails as the incident was not protracted. (Peacher Dep. at 91). Accordingly, the court finds that Officer Rzepka is entitled to qualified immunity, and thus summary judgment must be granted.

## Conclusion

On the basis of the foregoing, Officer Rzepka's motion for summary judgment [DE 119] is hereby GRANTED.

Entered: March 12, 2013.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court